IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RAIN BIRD CORPORATION, a
California corporation
      Plaintiff,

vs.                                    Case No. 3:08cv509/RV/EMT

PATRICK TAYLOR, Individual
doing business as AAA RAINBIRD
CONNECTION,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Rain Bird Corporation ("Rain Bird") filed this case asserting claims for damages, injunctive relief, costs, and attorney's fees for willful infringement, unfair competition and dilution of nine of its trademarks by Defendant Patrick Taylor, d/b/a AAA Rainbird Connection ("Taylor") (Doc. 1). Rain Bird asserts claims under the Lanham Act, 15 U.S.C. § 1114 *et seq.*, Florida common law, the Florida Registration and Protection of Trademarks Act ("FRPTA"), Fla. Stat. § 495.151, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (*id.*).[1] Presently before the court is Rain Bird's Motion For Summary Judgment and Supporting Memorandum, Statement of Facts in Support of Plaintiff's Motion for Summary Judgment, and supporting documents (Docs. 31, 32, 33). Taylor has not responded. For the reasons set forth below, the undersigned recommends that Rain Bird's motion for summary judgment be granted.

I.       PROCEDURAL BACKGROUND

---

[1]The court exercises subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367. Taylor does not contest personal jurisdiction or venue, and the court finds a sufficient basis for each.

Rain Bird filed the Complaint in this action on November 7, 2008 (Doc. 1).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions.  *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b).  Taylor was an inmate at the Okaloosa County Jail at the time he was served with the Summons and Complaint (*see* Doc. 6).  Taylor's Answer to the Complaint was entered on the record on February 27, 2009 (Doc. 11).  Taylor did not deny any of Rain Bird's allegations (*id.*).  In May of 2009, Rain Bird served a set of Requests for Admissions upon Taylor (*see* Doc. 33, Declaration of Stephen Cozart).  Taylor did not answer or object to any of the requests for admissions (*see id.*).  On July 31, 2009, Rain Bird filed and served its motion for summary judgment (Docs. 31, 35), along with a statement of undisputed facts (Doc. 32) and numerous exhibits (Docs. 32, 33).  The court issued an advisement order informing the parties of the importance and ramifications of summary judgment consideration and provided them with information as to the requirements for materials submitted for Rule 56 review (Doc. 36).  The order advised Taylor that he must file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, in the format set forth in Rule 56.1(A) of the Local Rules of the Northern District of Florida (*id.*).  The court expressly advised Taylor that all material facts set forth in the statement of material facts filed by Rain Bird would be deemed to be admitted by Taylor unless controverted by Taylor's statement of material facts (*id.*).  Taylor filed nothing in response to Rain Bird's motion for summary judgment.  Pursuant to Rule 56.1(B) of the Local Rules of the Northern District of Florida, the advisement date has passed; therefore, only those documents and evidentiary materials currently in the record will be considered by the court.

II.    RELEVANT FACTS[2]

The following facts are derived from Rain Bird's statement of facts.  Taylor did not file a statement of facts controverting any of the facts asserted by Rain Bird, therefore, Rain Bird's facts

---

[2]As this case comes before the court on Rain Bird's motion for summary judgment, the court views the facts in the light most favorable to Taylor as the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, discovery materials, and other evidentiary materials on file.

are deemed admitted by Taylor and undisputed for summary judgment purposes. *See* N.D. Fla. Loc. R. 56.1(A). The facts are also derived from Taylor's admissions by virtue of his failure to serve a written answer or objection to the matters included in Rain Bird's requests for admissions, which were served on Taylor on May 6, 2009 and May 15, 2009 (*see* Doc. 33, Declaration of Stephen M. Cozart, ¶¶ 2–5). *See* Fed. R. Civ. P. 36(a)(3), (b); United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir. 1992). This is so even though Taylor is a prisoner proceeding pro se. *See* 2204 Barbara Lane, 960 F.2d at 129 (citing J.D. Pharm. Distribs., Inc. v. Save-On Drugs & Cosmetics Corp., 893 F.2d 1201, 1209 (11th Cir. 1990)).

Rain Bird is a very well known and prominent corporation involved in the design, development, manufacture, supply and sale of high quality irrigation-related products, including irrigation sprinkler systems of various designs (Doc. 32, ¶ 2). Rain Bird conducts business in and has customers in Florida (*id.*, ¶ 1). Since at least 1936, Rain Bird has provided goods or services or both in relation to irrigation and has done so using its easily recognized and famous Rain Bird word and design marks (*id.*, ¶ 9). These word and design marks ("Rain Bird Marks") are owned by Rain Bird and used exclusively in commerce since 1936 (*id.*, ¶¶ 10, 16). The Rain Bird Marks include nine trademarks registered on the Principal Register of the United States Patent and Trademark Office: Registration No. 567,442 for the mark "RAINBIRD," Registration No. 771,728 for the mark "RAIN BIRD," Registration No. 771,809 for the mark "RAIN BIRD," Registration No. 908,921 for the mark "RAIN BIRD," Registration No. 962,015 for the mark "RAIN BIRD," Registration No. 982,529 for the mark "RAIN BIRD," Registration No. 999,325 for the mark "RAIN BIRD," Registration No. 984,827 for the mark "RAIN BIRD," and Registration No. 1,638,034 for the word and design mark depicted on page 3, paragraph 11 of Rain Bird's statement of facts and in Exhibit 9 attached thereto (*id.*, ¶ 11, Exs. 1–9). Rain Bird has developed valuable trademark rights and associated goodwill in the Rain Bird Marks (Doc. 32, ¶ 19). Rain Bird Marks identify Rain Bird as the source of goods and services bearing these marks (*id.*, ¶ 20). Taylor does not own any rights to use the Rain Bird Marks, nor is he authorized to use the Rain Bird Marks (*id.*, ¶¶ 39, 40).

Rain Bird Marks are famous in the State of Florida (*id.*, ¶ 17). Rain Bird advertises, markets, and promotes its goods and services bearing the Rain Bird Marks in commerce in the State of

Florida (*id.*, ¶ 18). Taylor has done business as AAA Rainbird Connection in the State of Florida (*id.*, ¶ 21). Taylor, doing business as AAA Rainbird Connection, promoted, advertised, and offered for sale goods and services relating to irrigation systems in direct competition with Rain Bird and its authorized distributors in the State of Florida (*id.*, ¶ 22). Taylor uses business forms, telephone directory listings, and e-mail addresses that imitate the Rain Bird Marks in connection with offering goods and services relating to irrigation systems (*id.*, ¶ 23). Taylor, doing business as AAA Rainbird Connection, created the invoices attached to Rain Bird's Complaint as Exhibit 10 (*id.*, ¶ 24). According to those invoices, Taylor did at least $13,471.00 of business as AAA Rainbird Connection within a period of three weeks in July of 2008 (*id.*, ¶ 25). The telephone directory listings attached to Rain Bird's Complaint as Exhibit 11 report the contact telephone number for AAA Rainbird Connection as corresponding to the telephone number printed on Taylor's invoices and business cards (*id.*, ¶ 26). Customers and prospective customers encountering Taylor's use of the AAA Rainbird Connection business name are likely to believe that he is associated with and sponsored by Rain Bird (*id.*, ¶¶ 27, 29). Customers and prospective customers encountering Taylor's use of business forms, telephone directory listings, and e-mail addresses that imitate the Rain Bird Marks are likely to believe that Taylor is associated with and sponsored by Rain Bird (*id.*, ¶¶ 28, 30). Taylor is aware of instances of consumer confusion between his use of the AAA Rainbird Connection business name, e-mail address, telephone directory listings, and business forms that imitate the Rain Bird Marks, and the actual Rain Bird Marks. (*id.*, ¶¶ 31, 32). The goods and services offered by Taylor doing business as AAA Rainbird Connection are offered in the same channels of trade as the goods and services offered by Rain Bird and its authorized dealers; they are targeted toward the same customers, and they are similar or related to the goods and services offered by Rain Bird and its authorized dealers (*id.*, ¶¶ 33–35).

Rain Bird obtained federal trademark registration of the Rain Bird Marks prior to Taylor's adopting the AAA Rainbird Connection business name (*id.*, ¶ 38). Taylor knew of Rain Bird's use of the Rain Bird Marks and Rain Bird's federal trademark registrations for the Rain Bird Marks prior to his adopting the AAA Rainbird Connection business name (*id.*, ¶¶ 36, 37). Taylor intentionally selected the AAA Rainbird Connection business name based on its similarity to the Rain Bird Marks (*id.*, ¶ 41). Taylor received profits while doing business as AAA Rainbird Connection (*id.*, ¶ 42).

III.    LEGAL STANDARDS

    A.    Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original).  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  A fact is "material" if it may affect the outcome of the case under the applicable substantive law.  *See id.*

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings.  Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial.  Fed. R. Civ. P. 56(e).  In assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party.  *See* Hairston, 9 F.3d at 918.  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment.  *See* Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

    B.    Trademark Infringement under Lanham Act, 15 U.S.C. § 1114 (Count I)

Trademark infringement is proscribed by 15 U.S.C. § 1114(1)(a), which prohibits any person from the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  To prevail on a trademark infringement claim based on a federally

registered mark, the registrant must show that "'(1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive.'" Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007) (quoting Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir. 1983)). Ordinarily, trademark infringement cases are predicated on the complaint that the defendant employed a trademark so similar to that of the plaintiff that the public will mistake the defendant's products for those of the plaintiff. See Burger King, Corp., 710 F.2d at 1492 (citing Exxon Corp. v. Texas Motor Exchange of Houston, Inc., 628 F.2d 500 (5th Cir. 1980)). Also, "it is well established that 'falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement.'" Id. (quoting Professional Golfers Ass'n of America v. Bankers Life & Casualty Co., 514 F.2d 665, 670 (5th Cir. 1975)). Thus, a trademark infringement case need not just involve imitation of the registrant's mark; the unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement. Id. (citing Professional Golfers Ass'n, 514 F.2d at 670).

C.      Unfair Competition under Lanham Act, 15 U.S.C. § 1125(a) (Count II)

The Lanham Act further provides civil liability for any person who uses in commerce any word, term, name, symbol, or any combination thereof, which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . ." 15 U.S.C. § 1125(a). To prove a violation of Section 1125(a), a plaintiff must prove (1) that it had a valid trademark and (2) that the defendant adopted an identical or similar mark such that consumers were likely to confuse the two. Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F.3d 792, 797 (11th Cir. 2003) (citing 15 U.S.C. § 1125(a) and Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997)). Trademark protection "is only available to distinctive marks, that is, marks that serve the purpose of identifying the source of the goods or services." Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1357 (11th Cir. 2007). "An unfair competition claim based only upon alleged trademark

infringement is practically identical to an infringement claim." Tally-Ho, Inc. v. Coast Community College District, 889 F.2d 1018, 1025–26 n.14 (11th Cir. 1990).

      D.      Dilution under Lanham Act, 15 U.S.C. § 1125(c) (Count III)

The antidilution provision of the Lanham Act provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). To prevail on a federal dilution claim, the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution. *See* Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 633 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1) and noting that after the 2006 amendments to the statute, a plaintiff need only prove a likelihood of dilution rather than actual dilution); *see also* Provide Commerce, Inc. v. Preferred Commerce, Inc., No. 07-80185 CIV, 2008 WL 926777, at *4 (S.D. Fla. Apr. 4, 2008) (unpublished) (same). The Lanham Act defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

     (i) The degree of similarity between the mark or trade name and the famous mark.

     (ii) The degree of inherent or acquired distinctiveness of the famous mark.

     (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

     (iv) The degree of recognition of the famous mark.

     (v) Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi) Any actual association between the mark or trade name and the famous mark.

*Id.*

E.　　Trademark Infringement and Unfair Competition under Florida Common Law (Counts IV and V)

Common law owners of marks that are unregistered under the Florida Trademark Act are limited to common law remedies in infringement actions.  *See* Tally-Ho, Inc., 889 F.2d at 1024.  The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition under the Florida Registration and Protection of Trademarks Act (FRPTA), Florida Statutes § 495.151, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Florida Statutes § 501.204, are the same as those for federal claims of trademark infringement and unfair competition.  *See* Gift of Learning Found., Inc., 329 F.3d at 802 (citing Investacorp, Inc. v. Arabian Investment Banking Corp. (Investcorp) E.C., 931 F.2d 1519, 1521 (1th Cir. 1991)); *see also* Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1355–56 (S.D. Fla. 2001).

F.　　Dilution under Florida Statutes (Counts VI and VII)

The FRPTA and FDUTPA also permit an antidilution claim under Florida Statutes § 495.151 and § 501.204, respectively.  These provisions permit any trademark owner, whether registered or unregistered, to prohibit either a non-competitor's or competitor's use of a similar mark if there is a likelihood of injury to business reputation or dilution of the mark's distinctive quality.  Upon its amendment, effective January 1, 2007, the language of the FRTPA antidilution provision tracks the federal antidilution statute.  The legal standards under the federal and Florida antidilution statutes are the same.  *See* Great Southern Bank v. First Southern Bank, 625 So. 2d 463, 471 (1993) (adopting principles for resolving federal dilution action as appropriate for resolution of dilution action under Florida law).

IV.　DISCUSSION

A.　　Trademark Infringement under Lanham Act (Count I)

The undisputed facts establish the three elements that establish a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114.  First, Taylor used the Rain Bird Marks in commerce, as evidenced by the following facts:  (1) Taylor admitted he has done business as AAA

Rainbird Connection in Florida, promoting, advertising, and offering for sale goods and services relating to irrigation systems in direct competition with Rain Bird and its authorized distributors in Florida; (2) the contact telephone number in telephone directory listings for AAA Rainbird Connection, attached to Rain Bird's Complaint as Exhibit 11, corresponds to the telephone number printed on Taylor's business invoices and business cards; (3) Taylor admitted that Exhibit 10 of Rain Bird's Complaint consists of true and accurate copies of invoices documenting sales of irrigation systems and related goods and services created by him doing business as AAA Rainbird Connection and particularly incorporating reproductions of the Rain Bird Marks in the invoices and Taylor's business cards; and (4) Taylor received profits while doing business as AAA Rainbird Connection and using the Rain Bird Marks on his business invoices and business cards.  Second, Taylor used the Rain Bird Marks without Rain Bird's consent, as evidenced by Taylor's admission that he is not authorized to use and does not own any rights to use the Rain Bird Marks.  Third, Taylor's mark is likely to cause consumer confusion or result in mistake with the Rain Bird Marks.  A comparison of the Rain Bird word and design mark included in Rain Bird's statement of undisputed facts (*see* Doc. 32, ¶ 11) and the mark prominently displayed on Taylor's invoices and business cards (*see* Doc. 32, Ex. 10), shows Taylor's mark to be identical to the Rain Bird Marks.  Additionally, Taylor admitted that customers and prospective customers encountering his use of the AAA Rainbird Connection business name and his use of the imitation of the Rain Bird Marks in business forms, telephone directory listings, and an e-mail address, are likely to believe that he is associated with or sponsored by Rain Bird.  Taylor also admitted he is aware of instances of actual confusion between the Rain Bird Marks and his business name AAA Rainbird Connection and use of the imitation mark on his business forms and in telephone directory listings and an e-mail address. Finally, Taylor admitted he knew of Rain Bird's use and registration of the Rain Bird Marks prior to his adoption of the AAA Rainbird Connection business name, and he intentionally selected that business name based on its similarity to the Rain Bird Marks.  The only reasonable inference from these facts is that Taylor willfully infringed the Rain Bird Marks to profit from Rain Bird's longstanding reputation and goodwill that the Rain Bird Marks represent.  Therefore, Rain Bird is entitled to summary judgment on its federal trademark infringement claim, Count I.

       B.      <u>Unfair Competition under Lanham Act (Count II)</u>

The undisputed facts also establish that Taylor engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a). It is undisputed that Rain Bird has a protectable[3] interest in the Rain Bird Marks, as evidenced by the following undisputed facts: (1) Rain Bird is a very well known and prominent corporation involved in the design, development, manufacture, supply, and sale of high quality irrigation-related products, including irrigation sprinkler systems of various designs; (2) since at least 1936, Rain Bird has provided goods or services or both in relation to irrigation and has done so using its easily recognized and famous Rain Bird word and design marks; (3) Rain Bird owns and has developed valuable trademark rights and associated goodwill in the Rain Bird Marks; and (4) the Rain Bird Marks identify Rain Bird as the source of goods and services bearing these marks. Therefore, Rain Bird has satisfied the first element of a claim under Section 1125(a).

Additionally, the undisputed facts establish that Taylor adopted a mark or business name that was the same or confusingly similar to the Rain Bird Marks, such that Taylor's use of the AAA Rainbird Connection name in his business created a likelihood of consumer confusion as to the proper origin of Taylor's goods and services. As previously discussed, Taylor admitted that customers and prospective customers encountering his use of AAA Rainbird Connection and his use of business forms, telephone directory listings, and an e-mail address that imitate the Rain Bird Marks are likely to believe that he is associated with or sponsored by Rain Bird. Taylor also admitted he is aware of instances of actual confusion between the Rain Bird Marks and his business name AAA Rainbird Connection and use of the imitation mark on his business forms and in telephone directory listings and an e-mail address. Therefore, both elements of an unfair competition claim are satisfied, and Rain Bird is entitled to summary judgment on its federal unfair competition claim, Count II.

C.    Dilution under Lanham Act (Count III)

---

[3]Eleventh Circuit cases differ in their spelling of the word denoting a mark that is entitled to protection: "protectable" or "protectible." *Compare* Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F.3d 792, 801 (11th Cir. 2003), *with* Investacorp, Inc. v. Arabian Investment Banking Corp., 931 F.2d 1519, 1522 (11th Cir. 1991). Supreme Court decisions also reflect the alternative spellings. Notably, the undersigned could not find the word in any printed dictionary, including Webster's Third New International Dictionary (unabridged), and Black's Law Dictionary (8th ed.). The Merriam-Webster Online Dictionary spelled it "protectable," and the undersigned will use that spelling.

The undisputed facts establish a violation of the antidilution provision of the Lanham Act, 15 U.S.C. § 1125(c).  First, it is undisputed that the Rain Bird Marks are famous in the State of Florida.  Second, Taylor adopted and used the business name "AAA Rainbird Connection" and imitated the Rain Bird Marks on his business forms after the Rain Bird Marks became famous.  The undisputed facts show that Taylor knew of Rain Bird's use of the Rain Bird Marks prior to adopting the AAA Rainbird Connection business name; and he knew of Rain Bird's federal trademark registrations for the Rain Bird Marks prior to adopting his business name.  Rain Bird's word mark is part of Taylor's business name, which he uses in his telephone directory listings, e-mail address, and on business forms and cards; and Rain Bird's symbol or design mark is exactly the same as the mark used by Taylor on his business forms and business cards.  Most importantly, Taylor admitted he intentionally selected his business name based on its similarity to the Rain Bird Marks.  The only reasonable inference from these facts is that Taylor selected "AAA Rainbird Connection" and his logo to commercially benefit from the fame and goodwill enjoyed by the Rain Bird Marks.

Third, Taylor's doing business as AAA Rainbird Connection and use of the Rain Bird Marks was commercial.  Taylor admitted he has done business as AAA Rainbird Connection in Florida, promoting, advertising, and offering for sale goods and services relating to irrigation systems in direct competition with Rain Bird and its authorized distributors in Florida.  Furthermore, he admitted he received profits while doing business as AAA Rainbird Connection.

Fourth, it is undisputed that customers and prospective customers encountering Taylor's use of the AAA Rainbird Connection business name, telephone directory listings, e-mail address, as well as business invoices and cards that imitate the Rain Bird Marks, are likely to believe that Taylor is associated with and sponsored by Rain Bird.  It is also undisputed that the goods and services offered by Taylor doing business as AAA Rainbird Connection are similar or related to the goods and services offered by Rain Bird; and Taylor's goods and services are offered in the same channels of trade and targeted toward the same customers as the goods and services offered by Rain Bird. Furthermore, Taylor admitted he intentionally selected the AAA Rainbird Connection business name based on its similarity to the Rain Bird Marks, even though he knew he was not authorized to use the Rain Bird Marks.  Taylor also admitted he is aware of instances of confusion between his use of the AAA Rainbird Connection business name, e-mail address, telephone directory listings, and

business forms that imitate the Rain Bird Marks, and the actual Rain Bird Marks.  Moreover, upon comparison of the Rain Bird Marks and the mark used by Taylor, a reasonable trier of fact could <u>not</u> find that the two marks are not identical.  Finally, if Taylor continues to use the Rain Bird Marks for his irrigation business, a likelihood exists that consumers will no longer perceive the Rain Bird Marks as representing a single source or origin, and Rain Bird's consumer goodwill may be diminished.  Thus Taylor's use of the business name AAA Rainbird Connection and use of the Rain Bird Marks is likely to dilute the Rain Bird Marks.  Therefore, the elements of a dilution claim under the Lanham Act have been satisfied, and Rain Bird is entitled to summary judgment on its federal dilution claim, Count III.

       D.      <u>Florida Common Law Trademark Infringement and Unfair Competition (Counts IV and V) and Trademark Dilution under Florida Statutes §§ 495.15, 501.204 (Counts VI and VII)</u>

       The same facts and legal analysis giving rise to a finding that Rain Bird has established its entitlement to summary judgment on its federal trademark infringement, unfair competition, and dilution claims impel the conclusion and merit of finding of intentional trademark infringement, unfair competition, and dilution under Florida statues and common law.  *See* <u>Victoria's Cyber Secret Ltd. Partnership</u>, 161 F. Supp. 2d at 1355–56.  Therefore, Rain Bird is entitled to summary judgment on its state law claims set forth in Counts IV through VII.

V.      RELIEF[4]

       A.      <u>Profits, Damages, Attorney Fees</u>

       The damages provision of the Lanham Act provides:

(a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil

---

     [4]In the interest of brevity, and in light of the court's conclusion that the facts show that Rain Bird is entitled to judgment as a matter of law on its claims under the Lanham Act, the court will address Rain Bird's entitlement to profits, damages, attorney's fees, and injunctive relief only under the Lanham Act.  Because the Lanham Act does not provide for punitive damages, and in light of the court's conclusion that the facts show that Rain Bird is entitled to judgment as a matter of law on its claims under Florida common law, the court will address Rain Bird's entitlement to punitive damages under Florida common law.

action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

As recognized by the Eleventh Circuit, Section 1117(a) vests considerable discretion in the district court.  *See* Burger King, Corp., 710 F.2d at 1495.  Guided by the principles of equity, the court may award the defendant's profits.  *Id.*  Additional extraordinary relief such as treble damages and attorney's fees are available under the statute if the district court believes that such an assessment would be just.  *Id.*  The statute also provides for the adjustment of any profits award if it is inadequate or excessive.  This remedial accommodation clearly envisions the exercise of the trial judge's discretion.  *Id.*  Certain principles should guide the district court in the exercise of its discretion.  First, an award of attorney's fees is proper only in "exceptional cases."  15 U.S.C. § 1117(a).  The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate and willful, *see* Dieter v. B & H Indus. of S.W. Fla., Inc., 880 F.2d 322, 329 (11th Cir. 1989), or a case where there is "evidence of fraud or bad faith," Burger King, Corp., 710 F.2d at 1495 n.11 (citing Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir. 1982)).  *See also* Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332 (11th Cir. 2001).  Second, there is no automatic right to enhanced damages.  Trial judges have wide latitude in determining a just amount of recovery for trademark infringement.  Burger King, Corp., *supra* (citing Holiday Inns, Inc. v. Alberding, 683 F.2d 931, 935 (5th Cir. 1982)).

In the instant case, Taylor admitted that he intentionally selected his business name based on its similarity to the Rain Bird Marks. Furthermore, Taylor admitted that his use of the Rain Bird Marks caused actual consumer confusion. This is sufficient to satisfy the undersigned that Taylor's infringement was intentional and thus qualifies this case as exceptional. Therefore, Rain Bird is entitled to an award of attorney's fees.

Additionally, Taylor does not dispute that he received profits while doing business as AAA Rainbird Connection. Rainbird submitted evidence that Taylor earned profits of $13,471.00 while doing business as AAA Rainbird Connection and using an imitation of the Rain Bird Marks on his business forms during the three week period of July 11–30, 2008 (*see* Doc. 32, Ex. 10). Taylor has failed to produce any evidence to refute Rain Bird's evidence of his profits from the use of the Rain Bird Marks; nor has he claimed entitlement to costs or deductions. Therefore, the undersigned concludes that Taylor profited an amount of $13,471.00 from his use of the Rain Bird Marks. Accordingly, Rain Bird is entitled to an award of those profits. Furthermore, in light of the exceptional nature of this case, that is, Taylor's intentional infringement and the actual consumer confusion it caused, the undersigned concludes that the profits award is inadequate to compensate Rain Bird for the violations of Sections 1114 and 1125(a) of the Lanham Act and should thus be adjusted to three (3) times the amount of Taylor's profits from the infringement, or $40,413.00, pursuant to Section 1117(a).

B.    Punitive Damages

Punitive damages are not available under the Lanham Act. *See* Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1183 (11th Cir. 1994) (award of damages under Lanham Act is discretionary, but may not be punitive); *see also* Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103 (2d Cir. 1988); Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710 (8th Cir. 1980) (court is given broad discretion to award monetary relief necessary to serve the interests of justice in an action under the Lanham Act, provided that it does not award that relief as a penalty). However, punitive damages are available under Florida common law for non-Lanham Act violations in the same action. The undersigned is of the opinion that the circumstances of this case do not warrant an award of punitive damages.

C.    Injunctive Relief

Under the Lanham Act, this court has the power to grant injunctions, their form and enforcement being provided for in the statute. 15 U.S.C. § 1116. Under the antidilution provision of the Act, Section 1125(c), an injunction may be issued to enjoin the unlawful use of a trademark or tradename without a showing that the public is actually or likely to confuse the defendant's product or service with that of the plaintiff, and without a showing of actual economic injury. *Id.*

In the instant case, the undisputed facts establish that Taylor's use of the business name AAA Rainbird Connection and the imitation Rain Bird Marks on his business forms is likely to mislead the public to believe that his business is associated with or sponsored by Rain Bird. The goods and services offered by Taylor doing business as AAA Rainbird Connection are offered in the same channels of trade as the goods and services offered by Rain Bird and its authorized dealers; and they are targeted toward the same customers. Taylor admitted that he intentionally selected the AAA Rainbird Connection business name based on its similarity to the Rain Bird Mark. Taylor also admitted that customers and prospective customers encountering his use of the AAA Rainbird Connection business name, as well as his use of the imitation mark on his business forms, are likely to believe that he is associated with and sponsored by Rain Bird. Additionally, Taylor admitted he is aware of instances of actual confusion between his business name and the Rain Bird Marks, and he is aware of instances of actual confusion between the marks he uses on business forms and the actual Rain Bird Marks. Therefore, Rain Bird is entitled to a permanent injunction enjoining Taylor from future acts of infringement, unfair competition, and dilution. *See* 15 U.S.C. §§ 1116(a), 1125(c)(1). An injunction including the following language is no broader than necessary to prevent public deception:

> Taylor, Taylor's agents, servants, employees, and attorneys, and all those acting in concert or participation with any of the foregoing, are hereby permanently restrained and enjoined, effective immediately, from using the term "Rain Bird" or variations thereof, including "AAA Rainbird Connection," in connection with goods and services covered by Rain Bird's Registered Trademarks, including U.S. Principal Registration Nos. 567442, 771728, 771809, 908921, 962015, 982529, 999325, 984827, and 1638034.

D.     Costs

Having found in favor of Rain Bird on its Lanham Act claims, the undersigned concludes that Rain Bird is entitled to recover the costs of this action, to be taxed by the clerk of the court. *See* 15 U.S.C. § 1117(a).

## VI.    CONCLUSION

There is no genuine issue of material fact as to any of Rain Bird's claims for relief and, based upon the undisputed facts, Rain Bird is entitled to judgment as a matter of law as to each claim. Therefore, Rain Bird is entitled to summary judgment on all claims.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Rain Bird's motion for summary judgment (Doc. 31) be **GRANTED**.

2.    That RainBird be awarded $40,413.00, pursuant to 15 U.S.C. § 1117(a).

3.    That Rain Bird be awarded its costs and attorney's fees incurred in this action in an amount to be determined by the court

4.    That Rain Bird be directed to file a motion for attorney's fees within **FOURTEEN (14) DAYS** from the date of docketing of this order.

5.    That the following permanent injunction be entered:

Taylor, Taylor's agents, servants, employees, and attorneys, and all those acting in concert or participation with any of the foregoing, are hereby permanently restrained and enjoined, effective immediately, from using the term "Rain Bird" or variations thereof, including "AAA Rainbird Connection," in connection with goods and services covered by Rain bird's Registered Trademarks, including U.S. Principal Registration Nos. 567442, 771728, 771809, 908921, 962015, 982529, 999325, 984827, and 1638034.

6.    That judgment be entered accordingly.

At Pensacola, Florida this <u>10</u><sup>th</sup> day of September 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**